UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| RONELL SHAMAR NICHOLS, | : | |
| Plaintiff, | : | |
| v. | : | No. 15-cv-00527 |
| | : | |
| DAVID BYRNE, George W. Hill Correctional | : | |
| Facility Warden; | : | |
| CORRECTIONAL OFFICER GOKMAN; | : | |
| CORRECTIONAL OFFICER SABINTINO; | : | |
| CORRECTIONAL OFFICER SERGEANT | : | |
| CLARK; | : | |
| GRIEVANCE COORDINATOR KEVIN M. | : | |
| CONROY; | : | |
| CORRECTIONAL LIEUTENANT MOORE; | : | |
| DEPUTY WARDEN MARIO COLUCCI, | : | |
| Defendants. | : | |

_____

## MEMORANDUM OPINION

Defendants' Motion to Dismiss, ECF No. 48 – Granted in part and denied in part
Plaintiff's Motion to Appoint Counsel, ECF No. 54 – Denied without prejudice

**Joseph F. Leeson, Jr.**                                                    **September 13, 2016**
**United States District Judge**

## I.      Introduction

Defendants David Byrne, Correctional Officer Gokman, Correctional Officer Sabintino,

Grievance Coordinator Kevin M. Conroy, Lieutenant Moore, and Deputy Warden Mario Colucci

have filed a Motion to Dismiss Plaintiff's Second Amended Complaint. For the reasons stated

below Defendants' Motion is granted in part and denied in part.  Plaintiff has filed a Motion to

Appoint Counsel; for the reasons stated below, Plaintiff's Motion is denied without prejudice.

**II.      Background**

Plaintiff Ronell Nichols, a former pretrial detainee at the George W. Hill Correctional Facility in Thornton, Pennsylvania ("GWHCF" or "the Facility"), initiated this case in February 2015 against Defendants Warden David Byrne, Correctional Officer Gokman, Correctional Officer Sabintino, and Correctional Officer Sergeant Clark, all of whom are present or past employees at the Facility, alleging that he was forced sleep on the top bunk despite the fact that he had been issued a medical pass assigning him to the bottom bunk because of a rod in his right femur. Compl., ECF No. 5. Following Defendants Byrne, Gokman, and Sabintino's initial Motion to Dismiss, the Court granted Nichols leave to amend his Complaint. *See* ECF No. 17. Nichols filed his Amended Complaint on June 1, 2015, alleging claims of First Amendment retaliation, intentional infliction of emotional distress, and negligence, and seeking declaratory relief as well as compensatory and punitive damages. ECF No. 18. The Court granted Defendants' motions to dismiss the Amended Complaint, dismissing Nichols's retaliation claim with prejudice and dismissing without prejudice Nichols's other claims. *See* Memorandum and Order, December 7, 2015, ECF Nos. 43-44. In addition, although the Amended Complaint did not clearly articulate an Eighth Amendment deliberate indifference claim, in view of the facts alleged in the Amended Complaint and Nichols's subsequent briefing, in which Nichols appeared to assert such a claim, the Court granted Nichols leave to amend his Amended Complaint in order to properly allege a deliberate indifference claim.

Nichols subsequently filed a Second Amended Complaint, which alleges the following facts.

On June 11, 2014, Nichols was committed to GWHCF, where he advised the medical staff that he had a metal rod in his right femur. *See* Second Am. Compl., Ex. 1 (hereafter "Pl.'s

Aff").[1] Because of Nichols's femur rod, the medical staff provided Nichols with a "special

needs" pass, assigning him to the bottom or lower bunk. Nichols was subsequently transferred

from the processing unit to the intake unit ("Unit 8"), where he showed Officer Sabintino the

special needs pass, explaining to Sabintino that he had the pass because of his femur rod. In

response, Sabintino told Nichols to sleep in a "boat," or small plastic container, on the floor of

the cell. Nichols refused, stating that he could not sleep inside the container because it was too

small for him ("it's just a plastic type box which if I curled up into a ball, I still don't think I

would have fit in it"). In response, Sabintino threatened Nichols with physical harm. Second Am.

Compl. ¶¶ 6, 18-28; Pl.'s Aff.[2]

      Subsequently Nichols was transferred from the intake unit to the general population unit

of the Facility ("Unit 6").[3] Before going to the unit, Nichols told Officer Gokman that he had a

bottom bunk pass because of the rod in his femur. Nevertheless, Gokman assigned Nichols to a

cell in which another inmate with a bottom bunk pass was already present. Nichols informed

Gokman that he was unable to jump down or climb down from the top bunk, and he showed

Gokman his bottom bunk pass. In response, Gokman threatened Nichols and ignored his pass,

while permitting the other inmate to continue sleeping on the bottom bunk. Second Am. Compl.

¶¶ 29-36; Pl.'s Aff.[4]

---

[1]    Nichols has attached to the Second Amended Complaint a document titled "Affidavit," dated January 15, 2016, in which he elaborates on the allegations included in the body of the Second Amended Complaint.

[2]    According to Nichols's subsequent briefing, after being threatened by Sabintino, Nichols took the top bunk, "enduring unbelievable pain from moving up and down from the top bunk." Pl.'s Br. Opp'n 3, ECF No. 51.

[3]    According to Nichols's subsequent briefing, this transfer occurred on June 21, 2014. Pl.'s Br. Opp'n 3, ECF No. 51.

[4]    According to Nichols's subsequent briefing, after Gokman's threats Nichols continued to sleep in the top bunk from June 21, 2014, to February 27, 2015. Pl.'s Br. Opp'n 3, ECF No. 51. In addition, Nichols has attached to his Brief in Opposition copies of three Special Needs passes

Thereafter, Nichols informed Sergeant Clark about his femur rod and medical pass, and about the "unconstitutional acts that [were] going on." Second Am. Compl. ¶¶ 37-38. In response, Sergeant Clark threatened Nichols and told him that if he filed a grievance, it would only be ripped up and thrown away. Second Am. Compl. ¶ 40.

Nichols submitted five grievances to Warden Byrne concerning the bunk bed situation and "the pain [he] was suffering," Second Am. Compl. ¶ 46. In addition, during a brief encounter with Byrne in the Facility, Nichols "tried to tell him what was going on," in response to which Byrne stated that he would look into it. Second Am. Compl. ¶ 49. However, Byrne failed to respond to Nichols's grievances. Second Am. Compl. ¶ 50.

Nichols further alleges that he submitted ten grievances to Kevin M. Conroy, the grievance coordinator of the Facility, but Conroy never responded. Second Am. Compl. ¶¶ 54-55. He also alleges that Lieutenant Moore was "grossly negligent" in his failure to "adequately supervise the subordinates who violated his rights," and that Deputy Warden Mario Colucci "failed to inform and train staff on policies designed to avoid deprivations of [his] constitutional rights." Second Am. Compl. ¶¶ 57, 59.

Nichols alleges that as a result of Defendants' conduct, he has suffered "excru[c]iating pain in his leg, lower back, toes on right foot, and right knee," conditions which continue to the present day. Second Am. Compl. ¶¶ 6, 61.[5]

Based on these allegations, Nichols asserts claims of "failure to protect," "deliberate indifference to medical needs,"[6] and "retaliation."[7] Second Am. Compl. ¶¶ 60-70. He seeks

---

he received from the Facility, assigning him to the bottom bunk, which span the dates of June 12, 2014, to February 21, 2015. *See id.*, Exs. A-C.

[5]  In his subsequent briefing, Nichols states that he suffers from "extreme pain shooting through his leg, pain in his neck and back, and his knees get stiff at times. . . . [He] feel[s] like the rod is ripping through his hip" and has great difficulty bending down. Pl.'s First Suppl. Br. 1, ECF No. 52.

compensatory and injunctive relief, including that the Court "arrange for [his] need for physical therapy or other follow-up medical services to be evaluated by a medical practitioner with expertise in the treatment and restoration and function of his leg," arrange for "the removal of the rod in [his] leg if recommended by the [aforementioned] medical professional," and that the Court "[i]ssue an injunction ordering GWHCF prison to put ladders and bed railing[s] on their bunks." Second Am. Compl. 10-12.

## III.     Defendants' Motion to Dismiss is granted in part and denied in part.

## A.     Nichols states a deliberate indifference claim against Sabintino and Gokman.

Defendants contend that Nichols's allegations of deliberate indifference fail to state a claim for several reasons. First, they contend that Nichols admits he was offered and refused an accommodation for his condition, namely the "boat" described above. Second, they contend that Nichols's claim is "essentially a claim related to overcrowding," because he alleges that he was placed in a cell in which an inmate with a lower bunk pass was already present. *See* Defs.' Mem. Supp. 4, ECF No. 48. Defendants also contend that Nichols's "alleged pain in his back, legs, and feet, without more, does not constitute a serious medical need" under the applicable Eighth Amendment or pretrial detainee standards, and that the officers' alleged refusal to permit Nichols

---

[6]     Nichols's "failure to protect" claim is identical to his "deliberate indifference to medical needs" claim, and the claims will therefore be considered as a single claim.

[7]     The Court dismissed Nichols's retaliation claim with prejudice in its previous Memorandum and Order. This claim is therefore no longer in the case. To the extent Nichols alleges his retaliation claim under a new theory, this additional claim is beyond the scope of the amendment permitted in the Court's previous Memorandum and Order, and it is therefore stricken.

to sleep in a bottom bunk cannot constitute "deliberate indifference" under those same standards. *See id.* at 8-10.[8]

Because the alleged events occurred when Nichols was a pretrial detainee, Nichols's claims are evaluated under the Due Process Clause of the Fourteenth Amendment. *See Hubbard v. Taylor*, 399 F.3d 150, 158, 166–67 (3d Cir. 2005). In evaluating claims of inadequate medical care advanced by pretrial detainees, the Third Circuit employs the Eighth Amendment deliberate indifference standard. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Accordingly, in order to state a Fourteenth Amendment claim of inadequate medical care, a plaintiff must allege: "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *See id.*

A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (quoting *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.3d 326, 347 (3d Cir. 1987)). A "serious medical need" is also one for which the denial of treatment results in "unnecessary and wanton infliction of pain" or permanent disability or loss. *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

"Deliberate indifference is a 'subjective standard of liability consistent with recklessness as that term is defined in criminal law.'" *Natale*, 318 F.3d at 582 (quoting *Nicini v. Mora*, 212 F.3d 798, 811 (3d Cir. 2000)). A finding of deliberate indifference requires proof that a prison official "knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting

---

[8]     The standard of review for a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is set forth in the Court's previous Memorandum and is incorporated herein. *See* Mem. Op. 4-6, Dec. 7, 2015, ECF No. 43.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The official must be "both [ ] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . draw the inference." *Id.* (quoting *Farmer*, 511 U.S. at 837). The Court of Appeals for the Third Circuit has found deliberate indifference "in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

As set forth above, Nichols alleges that he had a metal rod in his right leg for which he was issued a lower bunk pass by the medical staff. Further, he alleges that Officers Sabintino and Gokman ignored the pass and forced him to sleep on the top bunk, and that he suffered severe and long-lasting leg, back, and foot pain as a result of getting into and out of the top bunk. These allegations suffice to allege a serious medical need.[9] *See Williams v. Kort*, 223 F. App'x 95, 100 (3d Cir. 2007) (holding that plaintiff's injury resulting from twisting his knee amounted to a serious medical need); *Harris v. Hershey Med. Ctr.*, No. 1:08-CV-843, 2009 WL 2762732, at *5 (M.D. Pa. Aug. 27, 2009) ("[T]he Court finds that Harris has alleged that he had a serious medical need: chronic leg and back pain for which he had been previously prescribed certain therapy and medication and caused him to walk with a cane."); *Gutzman v. California Dep't of Corr.*, No. 108CV01917OWWGSAPC, 2009 WL 301954, at *3 (E.D. Cal. Feb. 6, 2009)

---

[9]     Defendants correctly point out that Nichols's Second Amended Complaint "does not report any specific instances where he was injured getting in or out of the top bunk, but rather makes general complaints of pain that he alleges must have occurred from getting in and out of the top bunk." Defs.' Mem. Supp. Mot. 2, ECF No. 48. Nevertheless, in view of the "well-established principle that a pro se prisoner's pleadings should be subject to less stringent standards of specificity and their complaints should be construed liberally," *Lewis v. Attorney Gen. of U.S.*, 878 F.2d 714, 722 (3d Cir. 1989), this lack of specificity concerning the circumstances of Nichols's injuries is not fatal to his claims.

("Plaintiff's allegation that he had metal rods in his leg and a fracture in his lumbar spine establishes the existence of a serious medical need.").

With respect to deliberate indifference, "[a] number of district courts have found 'that negligently failing to assign a prisoner to a bottom bunk does not meet the subjective prong for a deliberate indifference claim.'" *See Douglas v. Doe*, No. CIV.A. 10-5574, 2014 WL 4494969, at *6 (E.D. Pa. Sept. 12, 2014) (quoting *Liner v. Fischer*, No. 11–6711, 2013 WL 4405539, at *22 (S.D.N.Y. Aug.7, 2013)). In this case, however, Nichols "sets forth facts alleging more than mere negligence." *See id.* With respect to Gokman, Nichols alleges that he showed Gokman his medical pass assigning him to the lower bunk, informed him that the pass was issued to him because of his femur rod, and explained to him the reason that his femur rod precluded him from sleeping on the top bunk ("I can't jump down or climb down from the top bunk."). Nichols's allegations with respect to Sabintino are somewhat more ambiguous, since Nichols does not specifically allege that he told Sabintino why he could not sleep on the top bunk. Nevertheless, Nichols does allege that he showed Sabintino his medical pass and informed him that he was given the pass because of his femur rod. With respect to Sabintino's offer of the "boat" described above, Nichols alleges that he informed Sabintino that the "boat" was too small for him.[10] These allegations state a claim for deliberate indifference with respect to Sabintino and Gokman. *See Dykeman v. Ahsan*, 560 F. App'x 129, 132–33 (3d Cir. 2014) (holding that an inmate who suffered from pain in his right hip stated a claim of deliberate indifference against prison officials who allegedly failed to provide him with a medically prescribed extra mattress and cushioned shoes); *Whitehead v. Wetzel*, No. 3:14-CV-51, 2016 WL 3561809, at *7 (W.D. Pa. June 2, 2016), *report and recommendation adopted*, No. 3:14-CV-51, 2016 WL 3577604 (W.D.

---

[10]     Nichols states in his briefing that in order to fit inside the boat, he "would have to bend his leg in a way that would cause[] him excruciating pain in his leg." Pl.'s Br. Opp'n 5.

Pa. June 27, 2016) ("Courts have found that it can be an Eighth Amendment violation where an inmate has a serious medical need requiring him to use the bottom bunk but the prison officials are deliberately indifferent to that need."); *Guilfoil v. Pierce*, No. CIV.A. 06-493-GMS, 2009 WL 688957, at *5 (D. Del. Mar. 16, 2009) ("Refusal of prison officials to assign an inmate with a herniated disc to a bottom bunk may constitute deliberate indifference if the inmate's condition is sufficiently serious.").[11]

**B.     Nichols's claims against Defendant Byrne are dismissed with prejudice.**

In the Court's previous Memorandum, the Court dismissed without prejudice Nichols's claims against Warden Byrne, finding that Nichols failed to plausibly allege that Byrne was personally involved in any of the alleged events at issue. Nichols's Second Amended Complaint fails to remedy this deficiency. First, the Second Amended Complaint reiterates Nichols's allegations from the Amended Complaint that he "tried to tell [Byrne] what was going on" during a brief encounter with Byrne in the Facility, and that Byrne "said he'll look[] into it [while] he was rushing away from me." Second Am. Compl. ¶ 49. This is not sufficient to allege Byrne's personal involvement. Nichols also alleges that he submitted several grievances to Byrne, but this likewise is insufficient to allege personal involvement. *See Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) (holding that "an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement") (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Because Nichols has already been given two opportunities to amend his complaint, further amendment of

---

[11]     Defendants contend that when a prisoner is being treated by medical personnel, non-physician officials cannot be deliberately indifferent for failing to intervene in the medical treatment. Here, however, Nichols is not claiming that Sabintino and Gokman "failed to intervene" in his medical treatment. Rather, he is claiming the officers intervened to his detriment by deliberately refusing to provide treatment that had been prescribed to him by the prison's medical staff.

Nichols's claims against Byrne would be futile or inequitable. All claims against Byrne are dismissed with prejudice.

**C.      Nichols's claims against Conroy, Moore, and Colucci are dismissed without prejudice.**

Nichols's Second Amended Complaint adds three Defendants who were not named in Nichols's previous complaints: Kevin M. Conroy (the grievance coordinator at the Facility); Lieutenant Moore; and Deputy Warden Mario Colucci. First, with respect to Conroy, Nichols alleges that Conroy failed to address his grievances. However, as with Byrne, this is insufficient to allege Conroy's personal involvement. With respect to Lieutenant Moore and Deputy Warden Colucci, Nichols alleges that Moore "did not adequately supervise the subordinates who violated [his] rights" and that Colucci "failed to inform and train staff on policies designed to avoid deprivations of my constitutional rights." Second Am. Compl. ¶ 57. These claims are conclusory and not well pleaded, and they are therefore dismissed. However, because Nichols has not yet had the opportunity to amend his claims against these Defendants, he will be permitted to amend his complaint solely with respect to his claims against Defendants Conroy, Moore, and Colucci.

**IV.      Nichols is permitted additional time to serve Sergeant Clark.**

As set forth above, the Second Amended Complaint alleges that Nichols told Sergeant Clark about his femur rod, medical pass, and the officers' refusal to assign him to a lower bunk, and that Sergeant Clark responded by threatening Nichols. In their Motion to Dismiss the Second Amended Complaint, Defendants state that Sergeant Clark "is no longer employed at GWHCF, has not been served with original process, and thus is not part of the instant motion." Defs.' Mot. Dismiss 2. Nevertheless, for the sake of efficiency, it is appropriate to address in this Memorandum the status of Nichols's claims against Sergeant Clark.

Nichols first attempted service on Sergeant Clark at GWHCF in May 2015, at which time service was accepted by Warden David Byrne. *See* ECF No. 16. Subsequently, in Defendants Byrne, Gokman, and Sabintino's Motion to Dismiss the Amended Complaint, Defendants stated that "Correctional Officer Sergeant Clark is no longer employed at GWHCF, has not been served with original process, and thus is not part of the instant motion." ECF No. 21. The Court then issued an Order directing the U.S. Marshals Service to effect service of the Amended Complaint on Sergeant Clark and, in the event that the summons was returned unexecuted, ordering Nichols to provide the Clerk of Court with Sergeant Clark's correct address so that service could be made. ECF No. 24. Thereafter, service was accepted on Clark's behalf at GWHCF by Mario Colucci, the Deputy Warden. ECF No. 33.

Clark then filed a Motion to Dismiss Nichols's Amended Complaint, contending that "[a]lthough the summons was accepted, there was no one at GWHCF that was authorized to accept service on behalf of Defendant Clark," that Defendant Clark "does not have notice of this lawsuit," and that therefore the Federal Rules of Civil Procedure "require that the service on Defendant Clark be stricken." Def.'s Mem. Supp. Mot. Dismiss 4-5, ECF No. 38. Defendant Clark appended to his Motion an affidavit from Deputy Warden Colucci, stating that he "was not authorized to accept service of process on behalf of Defendant Clark" and that he did so inadvertently. Aff. Mario Colucci, ECF No. 38-1. Nichols did not respond to Clark's Motion. However, in his Motion for Leave to File a Second Amended Complaint, Nichols acknowledged that he had been unable to obtain Clark's correct address in order to effectuate proper service on him, and he stated that he intended to drop Clark as a party. ECF No. 30.

In the Court's previous Memorandum, the Court reviewed the above-mentioned materials and dismissed all claims against Clark without prejudice. Nichols's Second Amended Complaint

once again alleges claims against Clark. To date, however, Clark has not been served with process. In part, this may be due to the Court's own failure to direct the Clerk of Court to issue another summons to Nichols with which he could again attempt to serve Clark. Nichols therefore has shown good cause for his failure to serve Clark. Accordingly, as reflected in the Order accompanying this Memorandum, Nichols will be granted additional time to effect service on Sergeant Clark. The Court will direct the Clerk's office to issue a summons to the U.S. Marshals Service for Sergeant Clark and will direct the U.S. Marshals Service to furnish Nichols with a blank USM-285 form. It is Nichols's responsibility to provide the correct address for Sergeant Clark on the USM-285 form and to return the form to the Marshals Service.

**V.     Nichols's Motion to Appoint Counsel is denied without prejudice.**

Nichols filed a Motion to Appoint Counsel on May 12, 2015, stating that he requires counsel because, among other things, the case involves medical issues and he has only a tenth-grade education. The Court is mindful that cases involving medical issues can prove challenging to pro se plaintiffs. *See Kimbugwe v. United States*, No. CIV.A. 12-7940 FLW, 2014 WL 6667959, at *7 (D.N.J. Nov. 24, 2014) ("Given the need for discovery and factual development in this case, the likelihood that Plaintiff will need an expert witness, and Plaintiff's inability to pursue investigation of his claims because he is no longer detained at ECCF, this Court finds that the appointment of pro bono counsel for Plaintiff, pursuant to 28 U.S.C. § 1915(e)(1), is necessary."). However, thus far Nichols has demonstrated the ability to present comprehensible arguments and to present his own case. He has demonstrated the ability to present arguments and relevant legal research supporting his claims in a clear and concise manner. *See Tyrrell v. Dauphin County Prison*, 2015 U.S. Dist. LEXIS 31068, *3 (M.D. Pa. Mar. 13, 2015). It therefore does not appear that Nichols will suffer prejudice if forced to continue to prosecute this case on

his own. In the event, however, that future proceedings demonstrate the need for counsel, the matter may be reconsidered either sua sponte or upon motion of Nichols.

## VI.      Conclusion

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint is granted in part and denied in part, and Plaintiff's Motion to Appoint Counsel is denied without prejudice.

Nichols is granted leave to amend his complaint solely with respect to his claims against Defendants Conroy, Moore, and Colucci. Nichols is advised that "any amended complaint must be complete in all respects. It must be a new pleading that stands by itself as an adequate complaint without reference to any documents already filed." *Bowens v. Employees of the Dep't of Corr.*, No. 14-2689, 2015 U.S. Dist. LEXIS 23147, at *28 (E.D. Pa. Feb. 26, 2015). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The complaint should be specific as to conduct, time, place, and persons responsible.  *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

Finally, Nichols is granted additional time to effectuate service on Sergeant Clark. The Court will direct the Clerk's office to issue a summons to the U.S. Marshals Service for Sergeant Clark and will direct the U.S. Marshals Service to furnish Nichols with a blank USM-285 form. It is Nichols's responsibility to provide the correct address for Sergeant Clark on the USM-285 form and to return the form to the Marshals Service.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

13